IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRENCE MCKEON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.  05 C 4311 |
| v. | ) |
| | ) JUDGE DAVID H. COAR |
| THE BELT RAILWAY COMPANY OF | ) |
| CHICAGO and TIMOTHY E. COFFEY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court is The Belt Railway Company of Chicago and Timothy E. Coffey's ("Defendants'") motion to dismiss Terrence McKeon's ("Plaintiff's") complaint for lack of subject matter jurisdiction. For the reasons set forth below, Defendants' motion is DENIED.

## I.    FACTUAL BACKGROUND[1]

Defendant The Belt Railway Company of Chicago ("BRC") is an Illinois company and a common carrier by rail engaged in interstate commerce. Defendant Timothy E. Coffey ("Coffey") is BRC's General Counsel, Secretary, and Director of Human Resources. Plaintiff is an Illinois resident who, at all relevant times, was employed by BRC as a locomotive engineer.

---

[1] The following facts are taken from the pleadings and the parties' supporting materials. See Capitol Leasing Co. v. Federal Deposit Insurance Corp., 999 F.2d 188, 191 (7th Cir. 1993) (stating that, on a motion to dismiss for lack of subject matter jurisdiction, it is proper for the court to consider matters beyond the allegations in the complaint).

BRC and The Brotherhood of Locomotive Engineers and Trainmen ("BLE"), which represented Plaintiff, had a collective bargaining agreement ("CBA") that governed the terms and conditions of Plaintiff's employment.

On August 1, 2003, Defendant Coffey, acting as an agent of BRC, told Plaintiff that "as of November 2003, due to remote control technology being installed, we are offering you a $50,000 buyout if you agree to stay until the remote control technology is installed and train a replacement employee, and at that time we will assist you in finding other employment with Indiana Harbor Railroad or Union Pacific Railroad." Compl. ¶ 4. Defendants state that they offered this buyout, or "separation allowance," to accommodate the engineers like Plaintiff who lacked dual seniority and therefore could not transition to switchman/conductor jobs in the event that installation of the remote control technology eliminated engineer jobs. Def.'s Notice of Removal ¶ 5.

Upon hearing the offer, Plaintiff contacted his union. Union representatives told him that there were no provisions in the CBA pertaining to any kind of "buyout" situation and he was free to negotiate on his own behalf. Indeed, BRC and BLE never negotiated the buyout offered to Plaintiff, and they never made amendments or attachments to the CBA regarding buyouts.

Defendants maintain that Plaintiff did not accept the buyout offer. Despite their fears, however, there continued to be sufficient work for engineers like Plaintiff once the remote control technology was installed. Plaintiff, therefore, continued to work. He approached Defendants nine months later, they maintain, to discuss the buyout offer again. But before the discussions concluded, Defendants learned that Plaintiff had accepted a position with Indiana

Harbor Belt Railroad. Defendants then terminated Plaintiff, they assert, for violating a rule against conflicting employment.

Plaintiff, by contrast, maintains that on or about the same day Defendants offered him the buyout (August 1, 2003), he and Defendants entered into an oral agreement. Plaintiff maintains that he agreed to continue his employment with BRC until the remote control technology was installed and he trained a replacement employee; and Defendants agreed to give Plaintiff a $50,000 buyout and assist him in finding other employment with Indiana Harbor Railroad or Union Pacific Railroad.

Plaintiff contends that he performed his part of the agreement, but Defendants have not paid him $50,000 or any part of thereof, despite his demand for payment. Nor have Defendants assisted him with finding other employment. In addition, Plaintiff alleges, Defendants knew their statements (offering the buyout and employment assistance) were false, but made them anyway to deceive Plaintiff and to induce him to continue at BRC and train a replacement employee.

Plaintiff has charged Defendants with common law fraud (Count I) and breach of contract (Count II). He seeks compensatory damages of $50,000, plus interest. On July 27, 2005, Defendants removed this action from the Circuit Court of Cook County, Illinois to this Court, pursuant to 28 U.S.C. § 1441.

## II.     LEGAL STANDARD

When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1),[2] the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. See Long v. Shorebank Development Corp., 182 F.3d 548, 554 (7th Cir. 1999). The movant may use affidavits and other material to support its motion, United Phosphorus, Ltd. v. Angus Chemical Co., 322 F.3d 942, 946 (7th Cir. 2003), and the court may look beyond the pleadings and weigh any evidence that has been submitted on the issue to determine whether subject matter jurisdiction exists. See id; Long, 182 F.3d at 554.

## III.    ANALYSIS

Defendants move for dismissal on the grounds that Plaintiff's claims are pre-empted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, et seq., and therefore subject to the mandatory arbitration mechanism contained therein. See 45 U.S.C. § 158.

Congress enacted the RLA in 1926 to "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994). The RLA establishes a mandatory arbitral mechanism to settle two classes of disputes. "Major disputes" concern "rates of pay, rules, or working conditions," and they arise during the formation of or the effort to secure collective

---

[2] Defendants have moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), but acknowledge that they also could have designated their motion as one pursuant to Rule 12(b)(1). Because, as Defendants note, the distinction does not alter the Court's analysis, the Court proceeds using the standard applied to Rule 12(b)(1) motions.

bargaining agreements. 45 U.S.C. § 151a; Hawaiian Airlines, 512 U.S. at 252. "Minor disputes" grow "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions." 45 U.S.C. § 151a. They essentially involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Hawaiian Airlines, 512 U.S. at 253. In addition, they are subject to compulsory and binding arbitration before the National Railway Adjustment Board or a board established by employers and employees' unions. Consolidated Rail Corp. v. Railway Labor Executives' Ass'n, 491 U.S. 299, 303-04 (1989). Congress aimed to keep minor disputes "within the Adjustment Board and out of the courts." Atchison, Topeka & Santa Fe. Railway Co. v. Buell, 480 U.S. 557, 562 n.9 (1987).

To determine whether a case is a "minor dispute" that is pre-empted by the RLA, the Supreme Court has adopted the framework used in a Labor Management Relations Act ("LMRA") case:[3] "[W]here the resolution of a state law claim depends upon on interpretation of the CBA, the claim is pre-empted." Hawaiian Airlines, 512 U.S. at 261. On the other hand, "the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights [and obligations] that are independent of the CBA." Id. at 256, 260.

The relevant question, then, is whether Plaintiff's state law claims are independent of, versus grounded in, the CBA. Id. at 256, 266. Plaintiff argues (correctly, this Court finds) that his claims do not stem from the CBA. The CBA does not provide for or reference buyouts (in the very least, Defendants have not shown that it does), BLE told Plaintiff that he was free to negotiate on his own buyout and Plaintiff did so, and BRC and BLE never negotiated Plaintiff's

---

[3] See Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988).

buyout offer or amendments to the CBA regarding buyouts.  Thus, determining whether Defendants made fraudulent statements about the buyout to Plaintiff or breached a buyout agreement does not involve the interpretation or application of the CBA.

In Hawaiian Airlines, the Supreme Court distinguished cases where, as here, rights were independent of, as opposed to dependent on, a CBA.  The Court discussed Andrews v. Louisville v. Nashville Railroad Co., 406 U.S. 320 (1972), where the plaintiff's right not to be discharged turned on the extent of the railroad company's obligation to restore him to his regular duties after an injury rather than terminate him.  In Andrews, the plaintiff conceded that "the only source" of his right not to be discharged and his right to characterize his discharge as wrongful and therefore receive an award of damages, was the CBA.  Hawaiian Airlines, 512 U.S. at 257-58 (quoting Andrews, 406 U.S. at 324).  The state law claim at issue in Hawaiian Airlines did not present the same situation, the Court held:

> Here, in contrast, the CBA is not the 'only source' of respondent's right not to be discharged wrongfully. In fact, the 'only source' of the right respondent asserts in this action is state tort law. Wholly apart from any provision of the CBA, petitioners had a state-law obligation not to fire respondent in violation of public policy or in retaliation for whistle-blowing. The parties' obligation under the RLA to arbitrate disputes arising out of the application or interpretation of the CBA did not relieve petitioners of this duty.

Id. at 258.  As in Hawaiian Airlines, the CBA between BLE and BRC is not the "only source" (if a source at all) of Plaintiff's right not to be defrauded or right to full performance of a buyout contract—state law is.  "Wholly apart from any provision of the CBA," Defendants had a state law obligation to refrain from fraud or from breaching an oral agreement unrelated to the CBA. Id.; see also Westbrook v. Sky Chefs, 35 F.3d 316, 318 (7th Cir. 1994) (applying the "only source" analysis to find that the RLA did not pre-empt the plaintiff's state law claim).

The Seventh Circuit cases reaching the opposite conclusion (that is, finding pre-emption by the RLA) involve precisely the opposite set of facts. In Monroe v. Missouri Pacific Railroad Co., 115 F.3d 514 (7th Cir. 1997), unlike here, analyzing the plaintiff's wrongful discharge claims required interpretation of the CBA: The plaintiff alleged that the railroad failed to ask him, as was its right, to undergo a physical examination (the CBA supplied the railroad with this right); the plaintiff alleged that the railroad discharged him to avoid a possible personal injury claim (the CBA contained the standards to assess the facts underlying the plaintiff's allegations of pretext); the plaintiff challenged his disciplinary hearing (the hearing was conducted pursuant to the CBA); and the plaintiff asserted claims involving past and future wages, benefits, and promotions (the CBA determined each of these). See id. at 518. In a LMRA case, Amoco Petroleum Additives Co. v. Jackson, 964 F.2d 706 (7th Cir. 1992), the employer, unlike here, argued that a management-rights clause in the CBA provided it discretion where the CBA neither regulated nor forbade an act. The court ruled that accepting or rejecting the employer's argument required interpretation of the CBA. See id. at 709. Finally, in a case predating Hawaiian Airlines, BRAC v. Atchison, Topeka and Santa Fe Railway Co., 847 F.2d 403, 406-07 (7th Cir. 1988), the employer, unlike here, produced evidence that its buyout program, though not provided for in the CBA, was consistent with established past practice and therefore a minor dispute pre-empted by the RLA. Regardless of whether the ruling in BRAC comports with the standards subsequently outlined in Hawaiian Airlines, Defendants have not produced any

evidence similar to that produced by the defendants in BRAC. They therefore stand no chance of relief on these grounds.[4]

Moreover, Defendants urge this Court to find pre-emption, but they have not identified any portion of the CBA governing Plaintiff's rights with regard to fraud or breach of an oral agreement in this or any related context. Rather, Defendants advance several arguments that fail to apply the standard adopted in Hawaiian Airlines or, worse, rely on caselaw expressly disavowed by the Supreme Court.

First, Defendants argue that (1) absent the anticipated installation of the remote control technology or Plaintiff's lack of dual seniority, they never would have extended him a buyout offer; (2) BRC's right to use this remote control technology is the subject of a unrelated administrative grievance filed by BLE against BRC which involves the CBA; and (3) the manner in which BRC would deal with employees who did not hold dual seniority once that technology was implemented is governed by the CBA; therefore, the RLA pre-empts Plaintiff's state law claims. This multi-step argument fails because the standard does not ask whether the state law claims *arose* because of circumstances that, when all is said and done, somehow *relate* to provisions in the CBA. Rather, the standard asks whether the state law claims require "the application or the interpretation of" the CBA. Hawaiian Airlines, 512 U.S. at 255. Plaintiff's claims do not.

---

[4] Defendants suggest in passing that the buyout program could "arise[] from a course and practice of the BRC rather than from a specific provision of the CBA." Def.'s Reply at 6. As will be discussed below, however, Defendants base this argument on a case, Leu v. Norfolk & Western Railway Co., 820 F.2d 825, 829-30 (7th Cir. 1987), that employs an analysis since rejected by the Supreme Court. See Hawaiian Airlines, 512 U.S. at 264 (disavowing Elgin, Joliet & Eastern Railway Co. v. Burley, 325 U.S. 711 (1945)).

Second, Defendants argue that this Court must consult the CBA to determine whether Plaintiff timely accepted the buyout offer and, therefore, is or is not entitled to $50,000 in damages. The problem with this argument is that Defendants have not shown where in the CBA this Court would find such guidance. In fact, Defendants never once cite a provision of the CBA; quite possibly because, as this Court finds, the CBA does not govern Plaintiff's causes of action.

Third, Defendants argue that Plaintiff has filed an administrative grievance against BRC regarding his termination. In that grievance, according to Defendants, BLE (on behalf of Plaintiff) has alleged that Defendants terminated Plaintiff to avoid any buyout obligation. Defendants conclude that a finding in the arbitration proceeding in their favor would eliminate "Plaintiff's claim for receipt of [the $50,000] because his employment would not have been 'bought-out' but rather he would have been terminated in accordance with the rights . . . in the [CBA]." Def.'s Reply at 4-5. This argument fails because even if the arbitration did yield the conclusion that Defendants properly terminated Plaintiff in 2004 for acquiring conflicting employment, that finding says nothing about whether Defendants misled Plaintiff with a buyout offer and entered into an agreement regarding that offer on August 1, 2003, as Plaintiff claims.[5]

---

[5] For similar reasons, the Court rejects Defendants' argument that it would be inappropriate for the Court to allow Plaintiff to litigate his claims in this forum when a labor grievance is pending. First, this was not the holding in Kwasnik v. National Railroad Passenger Co., No. 96 C 1993, 1997 WL 109977 (N.D. Ill. 1997), the case Defendants cite for this proposition. Second, in Kwasnik, this Court reached a holding directly opposite the one reached here: Adjudication of Mr. Kwasnik's claims *required* interpretation of the CBA. See id. at *3-4. Also unlike here, the claims asserted in Mr. Kwasnik's grievance proceeding and his district court case were exactly the same. See id. at *4.

Fourth, Defendants cite <u>Elgin, Joliet & Eastern Railway Co. v. Burley</u>, 325 U.S. 711, 723 (1945). <u>Burley</u> and its progeny, Defendants insist, hold that pre-emption under the RLA is broader than pre-emption under the LMRA, therefore, the relevant question is whether Plaintiff's dispute is founded upon some incident of the employment relationship, even one independent of the CBA. Ill-advisedly, however, Defendants have skimmed too quickly the Supreme Court's very clear language in <u>Hawaiian Airlines</u>: "[W]e expressly disavow any language in <u>Burley</u> suggesting that minor disputes encompass state-law claims that exist independent of the CBA." <u>Hawaiian Airlines</u>, 512 U.S. at 264. Defendants do not stop there. They cite <u>Consolidated Rail</u> for the proposition that CBAs sometimes contain express as well as omitted terms, both of which are subject to the RLA; therefore, the relevant question is whether an employer's claim that the CBA governed its action is "arguably justified" by the CBA itself. <u>See</u> <u>Consolidated Rail</u>, 491 U.S. at 307. Again, Defendants have missed the lengthy discussion in <u>Hawaiian Airlines</u> distinguishing <u>Consolidated Rail</u> as a case that did not involve pre-emption and employed the "arguably justified" standard for the limited purpose of "policing the line between major and minor disputes." <u>Hawaiian Airlines</u>, 512 U.S. at 265. The test, wrote the Court, "said nothing about the threshold question whether the dispute was subject to the RLA in the first place." <u>Id.</u> at 266.

Finally, Defendants advance policy arguments[6] that fail to answer the single question before this Court: Does resolution of Plaintiff's fraud and breach of contract claims require the

---

[6] <u>See</u> Def.'s Reply at 6 ("A ruling by this court against preemption would open the doors for [other] employees to make the same claim . . . ."); <u>id.</u> ("[T]here is a substantial risk of conflicting rulings by state courts on a matter that is truly and essentially a question of federal law . . . .").

application or interpretation of the CBA?  The answer is no.  Accordingly, the RLA does not pre-empt Plaintiff's claims and this Court does not lack subject matter jurisdiction.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is DENIED.  The basis of Defendants' removal of this action to federal court was pre-emption by the RLA.  Since this Court has found that there is no pre-emption, what remains are two state law claims that Plaintiff, an Illinois citizen, has asserted against Defendants, at least one of whom is an Illinois citizen.  Lacking any federal basis for jurisdiction, this Court sua sponte REMANDS this action to the Circuit Court of Cook County, Illinois, District Five, Law Division.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **August 23, 2006**